Appeal No. 25-5625

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

YITZCHOK FRANKEL; JOSHUA GHAYOUM;
EDEN SHEMUELIAN; KAMRAN SHAMSA,
*Plaintiffs-Appellees*,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA; MICHAEL V. DRAKE; GENE D. BLOCK; DARNELL HUNT; MICHAEL BECK; MONROE GORDEN, JR.; RICK BRAZIEL,
*Defendants-Appellees,*

v.

ROES, 1-5,
*Movants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
No. 2:24-cv-04702-MCS-PDS
The Honorable Mark C. Scarsi, District Judge

**DEFENDANTS-APPELLEES' ANSWERING BRIEF**

Matthew R. Cowan
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
(213) 430-6000
mcowan@omm.com

Meaghan VerGow
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5504
mvergow@omm.com

Anton Metlitsky
Jennifer B. Sokoler
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 326-2000
ametlitsky@omm.com
jsokoler@omm.com

*Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT .......... vi
INTRODUCTION .......... 1
JURISDICTIONAL STATEMENT .......... 4
STATEMENT OF THE ISSUES .......... 4
STATEMENT OF THE CASE .......... 5
A. Factual Background .......... 5
B. Complaint and Procedural Background .......... 6
1. The Preliminary Injunction Proceedings .......... 6
2. UCLA's Answer and Motion For Judgment On The Pleadings .......... 8
3. The Continued Progression Of The Litigation .......... 10
4. The Motions For Intervention .......... 11
5. The Parties' Settlement And The District Court's Order Denying Intervention .......... 14
SUMMARY OF THE ARGUMENT .......... 17
STANDARD OF REVIEW .......... 21
ARGUMENT .......... 21
I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTIONS TO INTERVENE .......... 21
A. The District Court Acted Well Within Its Discretion In Denying Intervention On Timeliness Grounds .......... 23
1. Length and reason for delay .......... 24
2. Stage of the proceedings .......... 30
3. Prejudice .......... 31
B. Each of Movants' Counterarguments Lacks Merit .......... 33
1. Movants' contention that their intervention obligation was not triggered until UCLA's opposition to Plaintiffs' motion for partial summary judgment is forfeited and meritless .......... 34

**TABLE OF CONTENTS**
(continued)

**Page**


2. Movants' contention that their first motion was filed "early in the proceedings" is irreconcilable with the record....37

3. Movants' effort to distinguish the cases on which the district court relied fails ....38

4. Movants' reliance on a series of inapposite cases should be rejected ....39

C. The District Court Likewise Did Not Err In Its Alternative Determination That The Motions Were Moot ....42

II. MOVANTS' CHALLENGE TO THE CONSENT DECREE IS NOT PROPERLY BEFORE THIS COURT ....44

A. Failed Intervenors Are Not Parties And Therefore Cannot Appeal The Judgment....44

B. The Narrow Exception Allowing For Appeals By Non-Parties Is Inapplicable ....47

CONCLUSION....50

CERTIFICATE OF COMPLIANCE....51

STATEMENT OF RELATED CASES ....52

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaniz v. Tillie Lewis Foods*,
572 F.2d 657 (9th Cir. 1978)................................................................ 23, 36, 45

*Ashok Babu v. Wilkins*,
2023 WL 6532647 (9th Cir. Oct. 6, 2023).........................................................49

*Brown v. Google LLC*,
172 F.4th 1128 (9th Cir. 2026) .................................................................. passim

*Cabazon Band of Mission Indians v. Wilson*,
124 F.3d 1050 (9th Cir. 1997) ........................................................................29

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*,
309 F.3d 1113 (9th Cir. 2002) .................................................................. passim

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
42 F.4th 1013 (9th Cir. 2022) .........................................................................45

*Ceres Gulf v. Cooper*,
957 F.2d 1199 (5th Cir. 1992) ........................................................................40

*Chamness v. Bowen*,
722 F.3d 1110 (9th Cir. 2013) ........................................................................25

*Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*,
205 F.3d 1107 (9th Cir. 1999) ........................................................................48

*Finn v. Cobb Cnty. Bd. of Elections & Registration*,
111 F.4th 1312 (11th Cir. 2024) .....................................................................49

*Gartenberg v. Cooper Union*,
765 F. Supp. 3d 245 (S.D.N.Y. 2025)..............................................................14

*Habelt v. iRhythm Techs., Inc.*,
83 F.4th 1162 (9th Cir. 2023) ..................................................................... 47, 48

*High Sierra Hikers Ass'n v. U.S. Dep't of Interior*,
2012 WL 1949153 (N.D. Cal. May 29, 2012)....................................................39

*Hilao v. Estate of Marcos*,
393 F.3d 987 (9th Cir. 2004)...................................................................... 47, 49

*Kalbers v. U.S. Dep't of Just.*,
22 F.4th 816 (9th Cir. 2021) ................................................................ 22, 23, 38

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) .................................................................. passim

*Marino v. Ortiz*,
484 U.S. 301 (1988) ........................................................................ 44, 45, 48, 49

*NAACP v. New York*,
413 U.S. 345 (1973) ........................................................................................ 29, 30

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) ........................................................................................ 44, 45

*Orange County v. Air Cal.*,
799 F.2d 535 (9th Cir. 1986)............................................................................ 29, 36

*Pellegrino v. Nesbit*,
203 F.2d 463 (9th Cir. 1953)................................................................................40

*Ross v. Marshall*,
426 F.3d 745 (5th Cir. 2005)................................................................................40

*S. Cal. Edison Co. v. Lynch*,
307 F.3d 794 (9th Cir. 2002)............................................................................ 48, 49

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016)........................................................................ passim

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) .................................................................. passim

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) ..............................................................................22

*St. Charles Tower v. Kurtz*,
643 F.3d 264 (8th Cir. 2011)................................................................................40

*St. Charles Tower, Inc. v. County of Franklin*,
2010 WL 743594 (E.D. Mo. Feb. 25, 2010)........................................................40

*Synopsys, Inc. v. U.S. Dep't of Lab.*,
2022 WL 1501094 (9th Cir. May 12, 2022) .........................................................29

*U.S. Equal Emp. Opportunity Comm'n v. Activision Blizzard, Inc.*,
2023 WL 8908774 (9th Cir. Dec. 27, 2023) .................................................. 25, 31

*United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977) ..............................................................................................40

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*,
945 F.3d 1237 (9th Cir. 2020) .......... 47, 48

*United States ex rel. McGough v. Covington Techs. Co.*,
967 F.2d 1391 (9th Cir. 1992) .......... 41

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) .......... 34

*United States v. Carpenter*,
526 F.3d 1237 (9th Cir. 2008) .......... 46

*United States v. Kovall*,
857 F.3d 1060 (9th Cir. 2017) .......... 48

*United States v. Oregon*,
913 F.2d 576 (9th Cir. 1990) .......... 23

*United States v. Washington*,
86 F.3d 1499 (9th Cir. 1996) .......... 39, 41

*W. Watersheds Project v. Haaland*,
22 F.4th 828 (9th Cir. 2022) .......... 41

*Yniguez v. Arizona*,
939 F.2d 727 (9th Cir. 1991) .......... 40

**Other Authorities**

15A Charles Alan Wright et al.,
*Federal Practice and Procedure* § 3902.3 (3d ed. 2024) .......... 49

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees believe that oral argument is unnecessary in this case. The only issue properly before this Court entails the straightforward application of this Court's settled precedents as to the timeliness of motions for intervention. This Court's decision of that issue will not be significantly aided by oral argument.

## INTRODUCTION

This appeal arises from the district court's denial of a motion to intervene filed by several students and faculty members (the "Movants") at the University of California, Los Angeles ("UCLA" or the "University"), three of whom say they participated in a pro-Palestinian encampment established on UCLA's campus in April 2024. The district court concluded that the motion to intervene was untimely filed. The district court acted well within its broad discretion to deny intervention on timeliness grounds, and thus its decision should be affirmed.

The underlying lawsuit here was brought in June 2024 by several Jewish UCLA students and a faculty member ("Plaintiffs") against UCLA and several UCLA administrators. Plaintiffs alleged that the defendants had violated their constitutional and statutory rights by allowing members of the encampment to discriminate against them based on their Jewish identity. On July 18, 2025—after over a year of active litigation involving disputed preliminary injunction proceedings, discovery, and motion practice—the parties agreed to a settlement. The terms of the settlement included a consent decree that precludes UCLA from knowingly "allowing or facilitating the exclusion of Jewish students, faculty, and/or staff from ordinarily available portions of UCLA's programs, activities, and/or campus areas." 1-ER-7-8.

Movants filed their initial motion to intervene in May 2025, nearly eleven

months after the lawsuit was filed. They argued then, as they argue now, that UCLA did not adequately represent their interests in the litigation and that they would have made different tactical decisions about how to defend the litigation. Specifically, they contended that rather than defending the University's response to the encampment as reasonable and advancing institutional defenses such as qualified immunity, UCLA should have prioritized litigating whether Plaintiffs were subject to antisemitic incidents at all and whether Movants had a right to form the encampment. The district court ultimately concluded that the intervention effort was untimely because UCLA's approach to its defense "ha[d] been apparent since the inception of this litigation." 1-ER-3.

This Court's cases hold that a party seeking to intervene must do so promptly after it knew or should have known of its asserted ground for intervention. Yet Movants' *own intervention motion* argued that the basis for intervention was made clear the prior year by UCLA's July 2024 response to Plaintiffs' motion for a preliminary injunction, as well as UCLA's August 2024 decision to withdraw its appeal of the preliminary injunction the district court ultimately entered. And as explained in detail below, the record shows that UCLA repeated and reiterated its litigation positions in numerous filings, including its answer to the complaint and a motion for judgment on the pleadings—both of which were also filed months before Movants sought to intervene.

The district court thus did not abuse its ample discretion in denying Movants' belated attempt to intervene. Movants have conceded that they knew of the grounds for intervention nearly ten months before they filed their initial intervention motion. This Court has repeatedly held that delays much shorter than that adequately support a district court's denial of intervention. And this Court's precedents further make clear, as the district court recognized, that denial of a dilatory intervention request is entirely appropriate when it would interfere with a settlement reached by the parties—here, a settlement that was the product of numerous mediation sessions identified on the public docket months before the motion to intervene was filed.

The majority of Movants' brief is spent challenging the consent decree itself, arguing that Movants should have been allowed to object to an agreement precluding UCLA from knowingly allowing the exclusion of Jewish members of the UCLA community from UCLA programs and campus areas. Those arguments lack merit, but the Court should not reach them because they are not properly before the Court: as failed intervenors below, Movants are constrained to appeal only the denial of intervention.

For the foregoing reasons and those explained in detail below, Movants' appeal should be rejected.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a) because Plaintiffs' claims principally arose under the Constitution and federal law. The district court entered an order denying Movants' motions for intervention on August 1, 2025. 1-ER-2. To the extent the order denied intervention as of right, it is a final order over which this Court has jurisdiction under 28 U.S.C. § 1291. *See Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999). To the extent the order denied permissive intervention, appellate jurisdiction exists only "if the trial court has abused its discretion." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997) (quotation omitted) ("*LULAC*"). Because "no abuse of discretion has occurred," this Court "must dismiss the appeal [as to the denial of permissive intervention] for want of jurisdiction." *Id.* at 1308.

## STATEMENT OF THE ISSUES

1. Whether the district court acted within its broad discretion by denying as untimely an intervention motion filed nearly ten months after the prospective intervenors knew or reasonably should have known of their asserted basis for seeking intervention.

2. Whether the failed intervenors, as non-parties to the case, may challenge the consent judgment entered by the district court following the parties' settlement

of the case.

## STATEMENT OF THE CASE

### A. Factual Background

Plaintiffs—two Jewish graduate students, one Jewish undergraduate student, and a Jewish faculty member at UCLA—initiated this action on June 5, 2024. 5-ER-944. Plaintiffs' lawsuit alleged that UCLA and several administrators violated Plaintiffs' constitutional and statutory rights in connection with a pro-Palestinian encampment that was established by protestors in Royce Quad, at the center of UCLA's main campus, in April 2024. 5-ER-945.

The encampment at UCLA was one of many pro-Palestinian protest encampments that appeared on campuses across the country in the wake of the October 7, 2023 Hamas attack on Israel. 5-ER-954. Protestors began erecting tents and other structures in Royce Quad on April 25, 2024. 1-ER-15. UCLA first attempted to address the encampment with a de-escalation strategy. DSER-163-64.[1] Despite the University's efforts to maintain order, violence broke out during an April 28, 2024 counter-protest. 4-ER-735. The University accordingly sought the assistance of outside law enforcement and increased security presence at the site. *Id.* The encampment was cleared on May 2, 2024. 4-ER-736.

[1] Citations to the "DSER" refer to Defendants-Appellees' Supplemental Excerpts of the Record.

### B. Complaint and Procedural Background

Plaintiffs' June 2024 complaint asserted thirteen causes of action, including claims under 42 U.S.C. § 1983 for violations of the Equal Protection Clause, Free Speech Clause, and Free Exercise Clause; derivative conspiracy claims; a discrimination claim under Title VI of the Civil Rights Act of 1964; and state law claims for related statutory and constitutional violations. 5-ER-1000-15. In addition to The Regents of the University of California, Plaintiffs named six individual University administrators as defendants. 5-ER-950-51. On October 22, 2024, Plaintiffs filed an amended complaint, adding the faculty member plaintiff and an additional Free Exercise Clause claim. 4-ER-534-632.

Movants did not seek to intervene until May 2, 2025, and because their initial filing was defective, the operative intervention motion was not filed until June 2, 2025, nearly a full year after Plaintiffs initiated this action. As the following detailed account of the procedural history makes clear, Movants' asserted bases for intervention were apparent well before then.

#### 1. *The Preliminary Injunction Proceedings*

On June 24, 2024, shortly after filing suit, Plaintiffs moved for a preliminary injunction. 4-ER-746. UCLA filed an opposition to the preliminary injunction motion on July 8, 2024. 4-ER-699. According to Movants, that opposition did not

"seriously challeng[e] Plaintiffs' factual allegations." OB21.[2] Rather, UCLA argued that Plaintiffs' asserted injuries were attributable to the protestors, not to UCLA, and that UCLA's response to the encampment was reasonable. 4-ER-699-730. UCLA also argued that injunctive relief was unwarranted because UCLA had enhanced its ability to respond to protest activity on campus that did not comply with its time-place-manner restrictions, so Plaintiffs could not demonstrate any risk of imminent future injury. 4-ER-714-18. For those reasons, the opposition explained, Plaintiffs could not establish standing, state action, or deliberate indifference. *Id.*

Counsel for Movants filed an amicus brief on August 9, 2024 on behalf of the UCLA Chapter of Faculty for Justice in Palestine ("FJP"), in opposition to a preliminary injunction. 4-ER-633. That brief presented many of the themes and arguments later articulated by Movants in their intervention motions and in their brief on appeal. In particular, the amicus brief argued that FJP had a "strong interest" in the case; denied that FJP supported antisemitism; emphasized Jewish participation in the encampment; warned that the proposed injunction would have a "profound impact on FJP members' ability to exercise their first amendment

---

[2] While Movants' opening brief erroneously refers to this submission as a "Summary Judgment Opposition" filed "on July 15, 2024," the section header and citations in the opening brief reference UCLA's preliminary injunction opposition filed on July 8, 2024. *See* OB21.

rights"; and positioned the University as misaligned with FJP's interests because the "state and constitutional rights" of "pro-Palestine, anti-genocide protestors" had been "violated by UCLA." 4-ER-638-40.

The district court held a preliminary injunction hearing on July 29, 2024 and issued a preliminary injunction order two weeks later, on August 13, 2024. 1-ER-13, 4-ER-656. Movants' own opening appellate brief contends that the order "opened by stating that UCLA had declined to contest Plaintiffs' allegations that Jews were excluded from the encampment because they 'refused to denounce their faith.'" OB21; *see* 1-ER-14 (asserting that "UCLA does not dispute this" fact).

The district court rejected the University's contention that Plaintiffs lacked standing and concluded that a preliminary injunction was warranted. 1-ER-18-28. Along the way, the court specifically addressed the FJP amicus brief, noting that FJP's arguments that their members' own rights were violated would be "better addressed in a separately filed action," 1-ER-15 n.3, and finding the brief's contention that there was no identity-based exclusion from the encampment to be a "conclusory assertion … in tension with Plaintiffs' record evidence." 1-ER-16 n.4.

UCLA initially appealed the preliminary injunction, but withdrew its appeal thereafter. DSER-285.

2. *UCLA's Answer and Motion For Judgment On The Pleadings*

UCLA filed an answer to Plaintiffs' complaint on October 1, 2024. DSER-

230. After Plaintiffs filed their amended complaint, 4-ER-534, UCLA again filed an answer on November 26, 2024, DSER-159.

UCLA's answer acknowledged "that there has been antisemitic conduct and speech on UCLA's campus," that a statue erected on campus by unknown protestors—which depicted a pig holding a bag of money next to a Star of David—"was antisemitic," and that "antisemitic language was used and imagery was present on campus since October 7, 2023." DSER-240, 243-44, 263; DSER-172, 175, 201; *see also* DSER-172 (acknowledging "disturbing antisemitic language … and imagery"); *see also* 4-ER-554 (describing statue). UCLA likewise acknowledged that the encampment "at times obstructed access to certain campus spaces and facilities," that protesters "constructed barriers around the encampment," and that they "limited access to the encampment." DSER-233-34, 246-47, 270; DSER-162-63, 178, 183, 213.

UCLA's answer also asserted UCLA's institutional defenses, including, *inter alia*, that its response to the encampment was reasonable, that Plaintiffs' claims failed because the University had in place policies and procedures to prevent and remedy claims of discrimination and harassment, that Plaintiffs' asserted damages were attributable to the acts or omissions of third parties (including encampment participants), and that various immunity defenses barred the claims. *See* DSER-281-82; DSER-226-28.

Concurrent with its answer to the amended complaint, UCLA filed a motion for judgment on the pleadings, DSER-123—a motion that Movants conspicuously omit from their rendition of the case's procedural history, *see* OB8-36. Consistent with its prior submissions, UCLA's motion and its reply brief in further support of that motion primarily argued that sovereign immunity, qualified immunity, and state-law immunities barred or limited Plaintiffs' claims against the individual defendants and that a Title VI claim could not be asserted against those defendants. DSER-126-58; DSER-78-95.

3. *The Continued Progression Of The Litigation*

The district court's December 18, 2024 scheduling order set August 2025 as the cutoff for fact discovery, and the parties undertook discovery after UCLA filed its answer. DSER-106. The parties attended a discovery conference before Magistrate Judge Donahue on June 4, 2025. DSER-58.

The parties also engaged in periodic settlement discussions. On January 21, 2025, the parties filed a joint stipulation referencing their participation in private mediation on September 27, 2024, attesting to their "willingness to explore further settlement discussions," and requesting referral to a settlement conference before the magistrate judge, DSER-100-01, which Judge Scarsi promptly granted, DSER-96. The settlement conference was ultimately held before Magistrate Judge Audero on March 18, 2025, with minutes published on the docket reflecting that

the parties had made "significant progress toward settlement" and scheduling additional settlement conferences in furtherance of their "effort to reach a resolution of the entire matter." DSER-77.

Meanwhile, Plaintiffs filed a motion for partial summary judgment on February 28, 2025, seeking a permanent injunction based on their Free Exercise claims. 3-ER-482. Plaintiffs' motion relied on UCLA's answer to the operative complaint to argue that "UCLA concedes that 'since October 7, 2023, disturbing antisemitic language was used and imagery was present at protests that occurred on UCLA's campus,' including during 'the encampment at Royce Quad,'" and that "UCLA admits that the activists 'limited access to the encampment.'" 3-ER-489 (quoting UCLA's answer, *see* DSER-171-72, 176-78).

UCLA filed its summary judgment opposition on April 4, 2025, 3-ER-330, raising arguments aligned with the University's prior briefing: that UCLA was entitled to sovereign immunity; that third parties (including encampment participants) caused Plaintiffs' alleged injuries; and that UCLA's response to the encampment was reasonable. 3-ER-330-58. And the court heard oral argument on the motion for judgment on the pleadings on March 31, 2025. DSER-75.

4. *The Motions For Intervention*

Movants did not file their first intervention motion until May 2, 2025—nearly eleven months after the complaint was filed, nearly ten months after

UCLA filed its opposition to a preliminary injunction, more than seven months after UCLA first answered the complaint, more than five months after UCLA sought judgment on the pleadings, and more than a month after argument was held on that motion. Movants failed to attach a proposed pleading, as required by Federal Rule of Civil Procedure 24(c), however, and so Movants withdrew their motion and filed a new intervention motion on June 2, 2025. 2-ER-130.

Movants' June 2 motion, which sought both intervention as of right and permissive intervention, was substantially identical to their May 2 filing, except that it appended a proposed answer that diverged markedly from the answer filed by UCLA. 2-ER-133, 2-ER-159. Movants' stated basis for intervention was that UCLA's defense did not protect their First Amendment interests and that UCLA had failed to dispute Plaintiffs' characterization of the encampment. 2-ER-134-42, 144-49, 151-56. As purported evidence that UCLA would not adequately represent their interests in the litigation, Movants reached back to the earliest days of the litigation, contending that Plaintiffs' initial pleadings "repeatedly quote UC officials who either agree with Plaintiffs on the core issue of this case or refuse to dispute it." 2-ER-155.

Movants also heavily relied on the preliminary injunction proceedings to argue that intervention was warranted. Movants asserted that "Plaintiffs' baseless claims faced no pushback from UCLA" in its July 8, 2024 preliminary injunction

opposition, 2-ER-139; *see also id.* (claiming that UCLA did not "seek[]" to "correct the record"), and that UCLA's opposition "*confirms* that UCLA has no incentive to correct the factual record regarding anti-genocide protestors," *id.* (emphasis added). Movants decried what they perceived to be a "lack of a meaningful adversarial process" at the preliminary injunction stage that "skewed the record" before the district court. 2-ER-134, 139; *see also* 2-ER-137 (emphasizing preliminary injunction order's statement that "Defendants d[id] not place the key facts upon which this Order relies in material dispute" (quoting 1-ER-15 n.1)). As a result, Movants contended, their interests were impeded "[t]he moment" the August 2024 preliminary injunction issued, when—on the Movants' reading—"the Court declared that anti-Zionism is equivalent to antisemitism." 2-ER-152. In furtherance of that argument, Movants also characterized UCLA's withdrawal of its appeal of the preliminary injunction as being "[c]onsistent with the lack of adversarial process." 2-ER-140.

To justify their delay in filing a motion to intervene, Movants argued that the preliminary injunction had not "conclusively resolve[d]" the parties' dispute and that Movants had "recently learned of the parties' Joint Stipulation for Discovery," which contemplated that "discovery in this matter may involve disclosure of personally identifiable information protected by the Family Educational Rights and Privacy Act of 1974 ('FERPA') … including from students who are not parties to

this litigation." 2-ER-153-54 (quotation omitted).

Movants filed a reply brief in support of their June 2 intervention motion on June 23, 2025. DSER-14. That brief again argued that the preliminary injunction proceedings established their need to intervene. *See* DSER-15 (emphasizing preliminary injunction order's statement that "Defendants do not place the key facts … in material dispute"—a circumstance Movants attributed to their own "initial absence" as a party in the case); DSER-18 (citing court filings and news coverage dating to July and August 2024 as examples of the preliminary injunction order having been "used repeatedly to conflate anti-Zionism with antisemitism," generating a need for Movants' intervention).[3]

5. *The Parties' Settlement And The District Court's Order Denying Intervention*

On May 21, 2025, the district court issued an order that granted the motion for judgment on the pleadings in substantial part. DSER-60. Among other rulings, the court determined that the individual defendants were entitled to qualified immunity on Plaintiffs' constitutional law claims for damages, DSER-69, and that the Title VI claims could not be asserted against the individual defendants, DSER-70.

[3] The plaintiff's brief quoted in *Gartenberg v. Cooper Union*, 765 F. Supp. 3d 245 (S.D.N.Y. 2025) and referenced by Movants in their district court reply brief was filed on July 31, 2024. *Id.* at 258, 268.

Meanwhile, public filings revealed that the parties continued to engage in settlement discussions. *See, e.g.*, DSER-9 (July 3, 2025 status report informing the court that parties had participated in a June 18 settlement conference before Magistrate Judge Audero and that the "Parties are engaging in ongoing settlement discussions"); DSER-4 (similar). On July 18, 2025, the parties filed a status report informing the court that they had reached a settlement and intended to execute a long-form settlement agreement within ten days. 2-ER-51. The court responded with an order dismissing the case and vacating all hearings and deadlines. 1-ER-10. Ten days later, on July 28, 2025, the parties filed a stipulation requesting that the court enter their proposed consent judgment and permanent injunction. 2-ER-36.

Movants responded by filing a renewed "emergency" motion to intervene on July 29, 2025. 2-ER-30. That motion maintained that, if the court had jurisdiction "to enter a permanent injunction," the case remained "open," requiring that Movants' intervention motion be heard and ruled upon. 2-ER-32. The motion reiterated Movants' grounds for intervention and urged the court to grant the motion "before considering" the parties' stipulation. 2-ER-35.

On July 29, 2025, the district court entered the consent judgment and permanent injunction. 1-ER-5. That order made a series of findings, including that the "Court has determined that it has jurisdiction over the matters alleged in

Plaintiffs' First Amended Complaint" and that the "Court has determined that this Consent Judgment is fair, reasonable, equitable, lawful, and in the public interest." 1-ER-7. The district court then ordered, subject to additional conditions, that The Regents of the University of California and the individual defendants named in the suit would be enjoined from (1) "offering any of UCLA's ordinarily available programs, activities, or campus areas to students, faculty, and/or staff if [they] know the ordinarily available programs, activities, or campus areas are not fully and equally accessible to Jewish students, faculty, and/or staff" and (2) "knowingly allowing or facilitating the exclusion of Jewish students, faculty, and/or staff from ordinarily available portions of UCLA's programs, activities, and/or campus areas." 1-ER-7-8.

Shortly thereafter, on August 1, 2025, the district court issued another order to "address[]" the "substance" of the motions to intervene. 1-ER-2 n.1. Emphasizing that the parties had "spent extensive time in settlement negotiations and crafted a carefully designed agreement that disposes of all the issues in this case," the court denied the motions as moot, and held in the alternative that, "[e]ven if the Court entertained the merits of [the] motions, it would deny the motions on untimeliness grounds alone." 1-ER-2-3. The court noted the long history of the case that had already elapsed before Movants filed their operative intervention motion in June 2025, including the issuance of a preliminary

injunction, the setting of a case and trial schedule, the court's ruling on the motion for judgment on the pleadings, and the court's order requiring the parties to return to mediation. *Id.* The court then addressed the Movants' argument that the parties' March 4, 2025 discovery stipulation justified the delay. The court categorized that reason as "unpersuasive," noting that the substance of Movants' justification for intervention was to "engage in a 'meaningful adversarial process on crucial points'" and "defend[] the perspective of millions of Jews"—issues that, "to the extent that they are relevant to the disputes between the parties to this case, ha[d] been apparent since the inception of this litigation." *Id.* There was accordingly "no reason" for Movants to have waited until June 2025 to move for intervention, such that the pending motions were untimely. 1-ER-3-4. In light of its ruling on timeliness grounds, the court did not reach the question whether Movants had satisfied the remaining requirements for intervention. 1-ER-3 n.2.

Movants timely appealed.

## SUMMARY OF THE ARGUMENT

**I.** The district court did not abuse its discretion in denying Movants' intervention motions.

**A.** A district court's determination that a motion to intervene should be denied as untimely is reviewed for abuse of discretion, and the court acted well within its discretion in deeming the motions for intervention here untimely. Each

of the three factors governing the timeliness analysis amply supports the district court's exercise of discretion.

*First*, the "length and reason for delay" factor weighs heavily in favor of the district court's untimeliness determination because Movants waited to file their initial intervention motion for nearly ten months after UCLA filed its opposition to Plaintiffs' motion for a preliminary injunction, which Movants themselves concede made them aware of their asserted grounds for intervention. This Court has routinely upheld untimeliness determinations based on much shorter delays; the district court did not abuse its discretion in concluding that Movants' lengthy delay weighs against the timeliness of intervention.

*Second*, the "stage of the proceedings" factor supports the district court's exercise of discretion because this Court's cases hold that denial on untimeliness grounds is proper where, as here, the district court has substantially engaged with the issues in a case and litigation has progressed to the brink of settlement before the attempted intervention.

*Third*, and finally, the prejudice factor further weighs in favor of untimeliness. Prejudice stemming from Movants' delay is apparent given that many substantive and procedural issues had already been determined by the time Movants attempted to intervene and Movants' belated intervention would jeopardize the parties' resolution of the case.

**B.** Each of Movants' counterarguments is without merit.

*First,* Movants argue for the first time that their intervention obligation did not arise until after UCLA filed its opposition to Plaintiffs' motion for summary judgment. That contention is forfeited because it was not raised in the district court. And it is meritless because as Movants themselves repeatedly concede, they were made aware of their asserted need to intervene no later than UCLA's brief in opposition to Plaintiffs' request for a preliminary injunction, which was filed nearly ten months before their motion to intervene. Movants do not describe anything in UCLA's opposition to Plaintiffs' partial summary judgment motion that added anything to what Movants already knew about UCLA's litigation positions.

*Second*, Movants' insistence that their initial intervention motion was filed "early in the proceedings" is belied by the undisputed record, which demonstrates that the case had significantly progressed by the time of that filing.

*Third*, Movants fail to distinguish the cases cited by the district court, all of which demonstrate that failing to file an intervention motion promptly after the basis for intervention is established supports denial of intervention as untimely.

*Fourth*, the cases on which Movants rely either do not support their position or are inapposite because they concern intervention solely for purposes of appeal—a form of intervention this Court has repeatedly recognized as involving

different issues and legal analysis than the type of general intervention at issue here.

**C.** The district court's alternative determination that the motions should be denied as moot was likewise proper. This Court has no need to address the issue, because the propriety of the district court's timeliness ruling suffices to dispose of this appeal. But in any event, the district court correctly determined that Movants had squandered any right they may otherwise have had to object to the consent decree by delaying their efforts to intervene, such that the motions were rendered moot by the court's entry of judgment.

**II.** The majority of Movants' opening brief is dedicated to attacking the consent decree itself, but none of those challenges is properly before this Court.

**A.** Movants, as failed intervenors, are not parties to this case and thus cannot appeal the merits of the underlying judgment. As decisions of this Court and the Supreme Court have repeatedly recognized, failed intervenors like Movants are constrained to appealing only the denial of intervention and cannot appeal from the judgment itself. Because the district court did not err in denying intervention, the Court should simply affirm the decision below. But even if this Court were to reverse the denial of intervention, it should still not consider Movants' challenges to the consent decree because the proper remedy would be remand for the district court's consideration of those arguments in the first

instance.

**B.** The narrow exception to the principle that non-parties cannot appeal from a judgment is inapplicable here. Movants cannot establish either of the required elements: they did not significantly participate in the district court proceedings and the equities do not favor hearing the appeal in any event. This Court accordingly has no occasion to consider Movants' challenges to the district court's entry of the consent judgment and permanent injunction.

## STANDARD OF REVIEW

This Court reviews "de novo a district court's denial of a motion to intervene as a matter of right, except for"—as relevant here—"a denial based on timeliness, which is reviewed for abuse of discretion." *Brown v. Google LLC*, 172 F.4th 1128, 1133 (9th Cir. 2026). A district court's denial of permissive intervention is likewise reviewed for abuse of discretion. *LULAC*, 131 F.3d at 1307. "A court abuses its discretion if it fails to apply the correct legal rule or standard or if its application of that rule was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Brown*, 172 F.4th at 1133 (quotations omitted).

## ARGUMENT

### I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTIONS TO INTERVENE

Intervention as of right pursuant to Federal Rule of Civil Procedure 24(a)

"requires a prospective intervenor to show that: (1) its motion is timely; (2) it has a significantly protectable interest relating to the subject of the action; (3) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) its interest is inadequately represented by the parties to the action." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (quotations and alterations omitted). Permissive intervention under Rule 24(b), meanwhile, requires prospective intervenors to show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common," *LULAC*, 131 F.3d at 1308 (quotations omitted), with courts then considering "other factors in making [their] discretionary decision on the issue," *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

As Movants' opening brief acknowledges, the district court denied intervention on two independent bases—namely, that their motions were untimely, and that they were moot. OB5, 37, 49.[4] While the district court did not err in either respect, this Court need not reach the mootness issue because Movants'

[4] The opening brief thus appears to recognize that its own contention that Judge Scarsi "refused to hear the motion on its merits" (OB48) is a fiction: the district court's August 1, 2025 order squarely addressed the merits of the pending intervention motions. 1-ER-2.

contention that the district court abused its discretion in denying intervention as untimely is meritless and should be rejected.[5]

### A. The District Court Acted Well Within Its Discretion In Denying Intervention On Timeliness Grounds

Timeliness "is the threshold requirement for intervention." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). "The question of timeliness is addressed to the sound discretion of the trial court and will be overturned only when an abuse of discretion is shown." *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). The district court acted well within its discretion in determining that the intervention motions were untimely.

Three factors govern the timeliness analysis: (1) "the reason for and length of the delay"; (2) "the stage of the proceedings at which an applicant seeks to intervene"; and (3) "the prejudice to other parties." *Kalbers*, 22 F.4th at 822 (quotation omitted). This Court "assess[es] each of these factors by reference to the 'crucial date' when 'proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties.'" *Id.* (quoting *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)). Here, each of

[5] Because the motion is untimely for purposes of intervention as of right and this Court analyzes "the timeliness element more strictly" in the "context of permissive intervention," the motion for permissive intervention fails *a fortiori*. *LULAC*, 131 F.3d at 1308; *see also id.* (deeming denial of intervention as of right on timeliness grounds "controlling" for purposes of permissive intervention).

the factors supports the district court's untimeliness finding.

1. *Length and reason for delay*

For purposes of this factor, "the time elapsed" in absolute terms "is not determinative." *Brown*, 172 F.4th at 1137. Instead, the court must look to "related circumstances, including the purpose for which intervention is sought," in order to assess whether the length and proffered reason for delay are justified relative to when a prospective intervenor "knew, or reasonably should have known, that his interests were not being adequately represented." *Smith*, 830 F.3d at 856-57 (quotation omitted). Notably, the inadequacy of representation or impairment of interests need not be definitive in order for the clock to begin running: as this Court recently emphasized, "the appropriate time to move for intervention" is "when [prospective intervenors] were on notice that their interests *might* be adversely affected by the outcome of the litigation—not when they could be certain of harm." *Brown*, 172 F.4th at 1137 (quotation omitted; emphasis in original); *see also Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc*., 309 F.3d 1113, 1120 (9th Cir. 2002) (prospective intervenors assumed "the risks of waiting," including the "possible denial of their motions to intervene as untimely," when they failed to act upon having "reason to know that negotiations might produce a settlement decree to their detriment," even if they "were not certain that the consent decree would be adverse to their interests").

Once the proposed intervenor is put on notice, an intervention motion must be filed promptly. In *Brown v. Google*, for example, a motion was deemed untimely when the movant "waited (at the very least) three months before moving to intervene." 172 F.4th at 1137. Moreover, while "delays of 71 and 79 days" had been "excused" in a prior decision, *Brown* explained that such delays were permissible only upon a showing of "extenuating circumstances." *Id.* at 1138 (discussing *Smith*, 830 F.3d at 859-62); *see also, e.g.*, *U.S. Equal Emp. Opportunity Comm'n v. Activision Blizzard, Inc.*, 2023 WL 8908774, at *2 (9th Cir. Dec. 27, 2023) (delay of three months rendered motion untimely). Depending on the particular circumstances, even much shorter delays may cause a motion to be deemed untimely. *See, e.g.*, *Chamness v. Bowen*, 722 F.3d 1110, 1121-22 (9th Cir. 2013) (where case was in advanced procedural stage, delay of just sixteen days was excessive and intervention was properly denied on untimeliness grounds).

Here, based on the undisputed record and Movants' own repeated admissions, Movants failed to file an intervention motion promptly after Movants knew or should have known that UCLA was not defending the litigation in a manner that Movants believed adequately represented their interests. As the opening brief confirms, Movants' "central reason for seeking intervention," *Brown*, 172 F.4th at 1134, was their view that UCLA's defense would fail to protect the interests of pro-Palestinian students and faculty that Movants claim are

at stake in this lawsuit, *see* OB3-4, 24, 26. *By their own admission,* Movants were on notice of these alleged inadequacies no later than the preliminary injunction briefing, nearly ten months before they first sought to intervene, as the district court concluded. *See* 1-ER-3 (district court's determination that Movants' asserted grounds for intervention "have been apparent since the inception of this litigation").[6]

This procedural history set forth above, *see supra* at 6-17, establishes why Movants' motion was not timely:

- Movants themselves argued that UCLA's preliminary injunction opposition "*confirm[ed]* that UCLA has no incentive to correct the factual record regarding anti-genocide protestors," making intervention necessary. 2-ER-139 (emphasis added).
- The district court's preliminary injunction order asserted that UCLA did "not dispute" facts that Movants maintain needed to be contested in order to protect their interests, *see supra* at 8, 1-ER-14, 16 n.4—a point that Movants' motion emphasized, including by asserting that their interests were impeded "[t]he moment" that the preliminary injunction issued, 2-

[6] That remains the case even assuming for the sake of argument that May 2, 2025, rather than June 2, is the operative date of attempted intervention, notwithstanding that Movants withdrew their May 2 motion, *see supra* at 12.

ER-139, 152.

- The district court expressly rejected the very merits arguments Movants attempt to assert in the context of this appeal when it responded in its preliminary injunction order to an amicus brief filed by FJP and authored by Movants' counsel in this case. The district court concluded that the brief's assertions were "in tension" with "Plaintiffs' record evidence," which it asserted "UCLA declined to refute," and stated that Movants' claims would be "better addressed in a separately filed action," *see supra* at 8, 1-ER-16 n.4, which should have placed Movants "on high alert" regarding their asserted need to intervene and advance the arguments the district court had considered and rejected, *Brown*, 172 F.4th at 1138.
- Movants cited below UCLA's withdrawal of its appeal of the district court's preliminary injunction order, 2-ER-140, which was apparent to them on the day this Court granted UCLA's withdrawal motion (August 26, 2024), DSER-285; *see supra* at 13.
- UCLA's answer to the complaint and amended complaint revealed how UCLA was litigating the case, including its approach to addressing Plaintiffs' allegations of antisemitic conduct. *See supra* at 8-9.

Accordingly, even treating the filing date of the defective May 2, 2025 intervention motion as the relevant date of intervention, Movants waited to move

to intervene until:

- ten months and twenty-seven days after the complaint;
- nine months and twenty-four days after UCLA filed its preliminary injunction opposition;
- eight months and nineteen days after the district court entered a preliminary injunction;
- eight months and six days after UCLA's withdrawal of its appeal of the preliminary injunction was effective; and
- seven months and one day after UCLA first answered the complaint.

Movants argued in the district court that each of these events demonstrated that their interests were impaired and that they were inadequately represented, *see* 2-ER-138-40, 154; DSER-15, 18, 20, including by filing their own proposed answer bearing no resemblance to the one filed by UCLA, *see* 2-ER-159. Movants thus conceded that each of these events placed them on notice of the supposed need to intervene.

The district court did not abuse its discretion in deeming the intervention effort untimely. This Court has routinely upheld untimeliness determinations where (as here) would-be intervenors "surely … should have known what was in the offing" after earlier developments in the litigation made clear "not only that their asserted interest was at stake, but also that their interest had diverged from the

[defendant's]," but "nonetheless … waited and watched." *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1061-62 (9th Cir. 1997); *see supra* at 24-25 (collecting cases); *see also, e.g.*, *Orange County v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986) (intervention untimely where the would-be intervenor "should have realized that the litigation might be resolved by negotiated settlement" and "should have intervened sooner" in order to "protect itself against this eventuality"); *Synopsys, Inc. v. U.S. Dep't of Lab.*, 2022 WL 1501094, at *2 (9th Cir. May 12, 2022) (intervention untimely, and prospective intervenor "must now live with the ramifications of [its] delay," where "it should have been clear earlier in this litigation that [the prospective intervenor's] interests were not adequately represented" by the defendant because it was "apparent" that the prospective intervenor's and the defendant's "interests and positions were not fully aligned" (quotation omitted)). Indeed, this Court has routinely upheld district courts' exercises of discretion that deemed much shorter periods of delay—including as little as sixteen days—to be untimely. *See supra* at 25 (collecting cases).

The Supreme Court has done the same. In *NAACP v. New York*, 413 U.S. 345 (1973), after the "United States had answered New York's complaint" in a manner that made their divergence of interests clear—much like in this case—it was "incumbent upon the appellants, at that stage of the proceedings, to take immediate affirmative steps to protect their interests" given the "strong likelihood"

of perceived inadequate representation, *id.* at 367. In those circumstances, a delay of just seventeen days sufficed to render the intervention motion untimely. *Id.* at 360, 367. The district court did not abuse its discretion in determining that the same result should obtain here in light of Movants' much longer delay.

2. *Stage of the proceedings*

The district court also correctly predicated its untimeliness determination in part on the advanced stage of the proceedings at the time of Movants' belated intervention effort, cataloging the court's own extensive engagement with the issues in the case in support of its determination that the motions were untimely. *See* 1-ER-3 (emphasizing the court had "issued a preliminary injunction in August 2024, issued a case and trial schedule in December 2024, issued a ruling on Defendants' motion for judgment on the pleadings in May 2025, and ordered the parties to return to mediation the same month"); 1-ER-4 (collecting cases that denied intervention where case was at advanced stage).

"[S]ubstantial engagement by the district court with the issues in a case 'weighs heavily against allowing intervention as of right,'" such that intervention is properly denied if a "case ha[s] progressed substantially." *Marsh*, 194 F.3d at 1051 (quoting *LULAC*, 131 F.3d at 1303). Here, as in *Marsh*, the fact that the district court had "substantively—and substantially—engaged the issues in this case," including via detailed rulings on the preliminary injunction and the motion

for judgment on the pleadings, "weighs heavily" against permitting intervention. *Id.* at 1050.

Moreover, by the time of Movants' filing, the litigation had progressed to the brink of settlement. As of the time Plaintiffs filed their opposition to the operative intervention motion, and as reflected on the public docket, the parties had already "engaged in two separate day-long settlement negotiations, including one before a magistrate judge, with another settlement conference scheduled for th[at] week." DSER-36. This Court has repeatedly recognized that rejecting intervention as untimely is appropriate in these circumstances. *See LULAC*, 131 F.3d at 1303 (deeming denial of intervention proper where "a lot of water had already passed underneath [the] litigation bridge" and "the district court and the original parties had covered a lot of legal ground together"); *Activision Blizzard*, 2023 WL 8908774, at *1 (same); *see also Brown*, 172 F.4th at 1133 (recognizing that denial of intervention is proper to "prevent a tardy intervenor from derailing a lawsuit within sight of the terminal" (quotation omitted)).

3. *Prejudice*

The relevant prejudice to the parties for purposes of the timeliness inquiry "is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Smith*, 830 F.3d at 857. The prejudice to the parties

stemming from Movants' delay should be apparent based on the foregoing discussion. Existing parties are prejudiced where, as here, "many substantive and procedural issues ha[ve] already been settled" after the attempted intervenor was put on notice of the need to intervene. *Marsh*, 194 F.3d at 1051. Here, that notice was provided no later than UCLA's opposition to Plaintiffs' motion for a preliminary injunction, *see supra* at 6-7, 12-13, and between the filing of that brief and the first intervention motion, the court had already issued a preliminary injunction, concluded that Plaintiffs were likely to succeed on some of their constitutional claims, established a discovery schedule, and referred the matter to a magistrate judge for settlement discussions. *See supra* at 8, 10. The district court did not abuse its discretion in concluding that allowing intervention at that point would prejudice the parties.

Of equal importance, Movants' belated motion "for full-party participation at a time when the litigation was, by all accounts, beginning to wind itself down" weighs heavily against them in "the timeliness calculus." *Marsh*, 194 F.3d at 1051 (quotation omitted); *see also, e.g.*, *Brown*, 172 F.4th at 1135 (intervention disfavored where belated motion "is not a case of merely prolonging the litigation" or "making resolution more difficult—it is a case of upending the resolution" (quotations and alterations omitted)); *Smith*, 830 F.3d at 857 (denial of intervention proper where "granting a belated motion to intervene would threaten the delicate

balance reached by existing parties after protracted negotiations"). That is especially so because, as explained, the public docket reflected that the parties were engaged in settlement discussions for months before the motion to intervene. In *California Department of Toxic Substances Control v. Commercial Realty Projects, Inc.*, for example, the fact that the attempted intervenor had been "informed of settlement negotiations" before intervening weighed heavily against the timeliness of an intervention motion that would interfere with settlement. 309 F.3d at 1120.

*California Department of Toxic Substances* moreover illustrates that this Court has applied the foregoing principles to settlements that result in consent decrees. In that case, this Court affirmed a district court's denial of intervention when the intervention motion—though filed before approval of the consent decree to which the parties had agreed—would if granted have "complicate[d] the issues and upset the delicate balance achieved by" the consent decree agreed to by the parties. *Id.* at 1119. The same is true here. Certainly, the district court did not abuse its discretion in so concluding.

### B. Each of Movants' Counterarguments Lacks Merit

Movants assert four arguments as to why the district court's untimeliness determination was an abuse of discretion. Each of their contentions is meritless.

1. *Movants' contention that their intervention obligation was not triggered until UCLA's opposition to Plaintiffs' motion for partial summary judgment is forfeited and meritless*

Movants argue that their intervention motions were timely because their obligation to intervene was not triggered until, at the earliest, the filing of UCLA's summary judgment opposition on April 4, 2025. *See* OB3, 24-25, 36, 48, 62. That argument is forfeited and wrong.

Movants' argument is forfeited because they failed to raise it below. This Court has repeatedly refused to consider new explanations for delay raised by would-be intervenors for the first time on appeal. In *Marsh*, for example, the Court invoked its "general rule" that it does "not consider arguments that are raised for the first time on appeal" when prospective intervenors "failed to present" their excuse for delay "to the district court" and the argument "first appear[ed] in their opening brief on appeal." 194 F.3d at 1052. The Court then determined that "[o]n the basis of the arguments actually placed before it by the parties, the district court correctly found that [the prospective intervenors] had offered no adequate explanation for their delay in seeking intervention." *Id.*; *accord United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) (prospective intervenor's new "explanation for its delay in seeking intervention was not presented to the district court," such that the Court would "not consider" it; "on the basis of the materials before it, the district court correctly determined that [the prospective

intervenor] had offered no adequate explanation for its delay in seeking intervention." (quotation and alteration omitted)).[7]

Regardless, Movants' argument that their intervention obligation was not triggered until UCLA's summary judgment opposition is incorrect. That filing was not a "changed circumstance[]" that can serve as the "crucial date" from which delay is properly measured. *Smith*, 830 F.3d at 854, 859 (quotations omitted). According to Movants' opening brief, the summary judgment opposition was significant because it "showed" that UCLA "would neither defend [their] First Amendment rights" nor "contest Plaintiffs' assertions" that the encampment "constituted an antisemitic 'Jew Exclusion Zone,'" and because it "condemned antisemitic conduct." OB24-25 (quoting 3-ER-350-51). But as explained earlier, Movants themselves conceded before the district court that the alleged

[7] The only explanation for delay that Movants did raise before the district court was that they intervened promptly after learning of the parties' discovery stipulation contemplating disclosure of information subject to FERPA. 2-ER-153-54. But Movants do not renew that argument on appeal, so it too is forfeited. And for good reason. As the district court explained, Movants' stated reason for intervention—that their participation was necessary because UCLA's litigation positions did not adequately represent Movants' interests—had nothing to do with Movants' supposed interest in the potential FERPA-governed disclosure. 1-ER-3. Rather, the district court explained that the relevant question was when the supposed inadequacies in UCLA's litigation position that Movants identified should have been apparent, and the answer was that they "have been apparent since the inception of this litigation." *Id.* It is no surprise, then, that Movants do not renew their FERPA-based argument here.

inadequacies they identify in UCLA's litigation position were apparent to them as early as UCLA's preliminary injunction briefing. *See supra* at 12-14, 26-28. Indeed, Movants repeat those concessions before this Court, describing UCLA's preliminary injunction opposition as having articulated a defense "[w]ithout seriously challenging Plaintiffs' factual allegations." OB21.

Remarkably, Movants at one point appear to suggest that their obligation to intervene may not have arisen until the parties' filing of the actual proposed consent decree and permanent injunction on July 28, 2025. OB63. That contention—which also was not raised below and thus is forfeited—is flatly contradicted by this Court's precedent, which holds that intervention is properly deemed untimely when prospective intervenors wait to see the precise terms of a consent decree notwithstanding that they "surely … knew the risks" that a "settlement decree would," in their view, "be to their detriment." *Alaniz*, 572 F.2d at 659; *see also Air Cal.*, 799 F.2d at 538 (same, where prospective intervenor "should have realized that the litigation might be resolved by negotiated settlement" and thus "should have intervened sooner"); *Brown*, 172 F.4th at 1137 (intervention untimely where prospective intervenors wait until "they could be certain of harm"); *Cal. Dep't of Toxic Substances*, 309 F.3d at 1119 (intervention untimely when motion to intervene was filed at the final stage of the action and would "complicate the issues and upset the delicate balance achieved" by the

consent decree to which the parties agreed).

In short, Movants have identified nothing illuminated by UCLA's summary judgment opposition or any later development in the litigation that was not already clear at much earlier stages of the case. Even if this new argument were properly before the Court, it would not alter the conclusion that the district court acted well within its discretion in denying intervention on timeliness grounds.

2. *Movants' contention that their first motion was filed "early in the proceedings" is irreconcilable with the record*

Movants repeatedly insist that their initial intervention motion was filed "early in the proceedings," OB37, 47, and thus that the "stage of the proceeding" factor favors them. Not so. As described, *see supra* at 30-31, Movants delayed their filing until after numerous substantive phases of the proceedings had already been completed and settlement negotiations between the parties had been publicly disclosed. In these circumstances, it was not an abuse of discretion for the district court to determine that "a lot of water had already passed underneath [the] litigation bridge," which weighs heavily against intervention. 1-ER-4 (quoting *LULAC*, 131 F.3d at 1303).

Movants' assertion that the case was at an early stage merely because discovery was ongoing, *see* OB60-61, is incorrect. This Court has eschewed a mechanical approach to the "stage of proceeding" inquiry, refusing to afford "talismanic significance" to any particular stage. *LULAC*, 131 F.3d at 1303.

Rather, the Court applies a "'nuanced, pragmatic approach' to examine whether 'the district court has substantively—and substantially—engaged the issues in [the] case.'" *Kalbers*, 22 F.4th at 826 (quoting *LULAC*, 131 F.3d at 1303). Here, as just described, a holistic assessment of the progress of the case amply supports the district court's determination. *See supra* at 30-31.

There also is no merit to Movants' effort to downplay the district court's engagement with the issues by labeling the preliminary injunction order a "transient, early order." OB62-63. The order entails substantive engagement with the issues, which is all that matters. *See, e.g.*, *Kalbers*, 22 F.4th at 826. Nor is Movants' contention that the district court's ruling on the motion for judgment on the pleadings "did not address the character of the encampment or rights of protesters" relevant. OB63. The motion for judgment on the pleadings raised institutional defenses that were available to UCLA no matter how those collateral issues might be resolved, and the district court properly resolved the issues that were actually before it.

3. *Movants' effort to distinguish the cases on which the district court relied fails*

Movants' attempt to distinguish the cases cited in the district court's order fails. According to Movants, the district court erred in relying on cases that involved periods of delay longer than the one at issue in this case. *See* OB61-62. Movants misunderstand the import of those cases, each of which illustrates the

governing principle at issue here: that timeliness is measured from the point at which a prospective intervenor knew or should have known of its basis for asserting that its interests may not be adequately represented. *See United States v. Washington*, 86 F.3d 1499, 1503, 1504-05 (9th Cir. 1996); *Cal. Dep't of Toxic Substances*, 309 F.3d at 1120; *LULAC*, 131 F.3d at 1304; *High Sierra Hikers Ass'n v. U.S. Dep't of Interior*, 2012 WL 1949153, at *2 (N.D. Cal. May 29, 2012). The district court rightly concluded—and certainly did not abuse its discretion in concluding—that Movants' motion for intervention was filed many months after that date passed. As discussed above, there is no shortage of cases holding that a district court acts well within its discretion in denying intervention attempts as untimely based on delays of even a few weeks. *See supra* at 25. Movants cite no case holding that a district court abuses its discretion in denying intervention when the attempted intervenor waits almost ten months after it should have understood that the defendant may not adequately represent its interests—as Movants have repeatedly conceded is the case here. *See supra* at 28.

4. *Movants' reliance on a series of inapposite cases should be rejected*

Finally, Movants invoke a series of inapposite cases, none of which supports their position. *See* OB63-64.

Movants first cite two out-of-circuit cases where, unlike here, a prospective intervenor moved to intervene shortly after the event triggering an obligation to

intervene. *See Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202-03 (5th Cir. 1992) (prospective intervenor took steps to intervene immediately after first receiving notice of the litigation); *St. Charles Tower, Inc. v. County of Franklin*, 2010 WL 743594, at *6 (E.D. Mo. Feb. 25, 2010) (motion was filed "within a week" of triggering event).[8] Movants derive no support from these cases, since Movants failed to exhibit anywhere close to the same diligence.

Next, Movants cite numerous cases involving post-judgment intervention for the limited purposes of appeal. *See Pellegrino v. Nesbit*, 203 F.2d 463, 465-66 (9th Cir. 1953) (motion filed after prospective appeal-only intervenor was informed of decision not to appeal by letter dated twelve days earlier); *Yniguez v. Arizona*, 939 F.2d 727, 730, 734 (9th Cir. 1991) (motion filed ten days after prospective appeal-only intervenor learned of decision not to appeal); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (prospective appeal-only intervenor moved "as soon as it became clear" that named plaintiffs would not appeal); *Ross v. Marshall*, 426 F.3d 745, 755 (5th Cir. 2005) (prospective appeal-only intervenor filed "promptly after the district court entered amended final judgment" that "would not be appealed by the existing parties"; earlier intervention "would have

---

[8] Movants cite *St. Charles Tower v. Kurtz*, 643 F.3d 264 (8th Cir. 2011), which did not address the timeliness of intervention. *See* OB64. The February 2010 decision underlying that opinion elucidates the district court's reasoning in deeming intervention timely.

been pointless" because interests were adequately represented until that time); *see also United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (appeal-only intervention promptly taken from the moment an appealable order issued, with rights previously preserved via objection). In each of these cases, the prospective intervenor's "central reason for seeking intervention," *Brown*, 172 F.4th at 1134, did not arise until late in the case, when it became known that the party previously representing the intervenor's interests would not appeal, such that their interests diverged for the first time. Those circumstances bear no resemblance to this case, where Movants' asserted divergence of interests with UCLA was apparent to them from the earliest stages and Movants sought wide-ranging intervention, not merely permission to prosecute an otherwise-abandoned appeal.

This Court has repeatedly recognized that appeal-only intervention is doctrinally distinct and involves a different analysis from routine motions for general intervention. *See Washington*, 86 F.3d at 1505 (distinguishing between standard "timeliness analysis" and the distinct "standards for 'limited intervention' for the purpose of appeal"); *W. Watersheds Project v. Haaland*, 22 F.4th 828, 837 (9th Cir. 2022) (recognizing that appeal-only intervention request "is analytically distinct from" broader intervention request seeking "to participate in a subsequent phase"); *see also Brown*, 172 F.4th at 1134 (explaining that the general rule that

intervention for the limited purposes of appeal is timely if a motion is filed within the time allowed for filing of an appeal "merely reflected the practical reality that if someone seeks to intervene after final judgment … that party must do so within the time period to appeal the final judgment" and has no application where, as here, appeal is not the "sole purpose" of the intervention and the motion is not "filed after final judgment had been entered"). These appeal-only intervention cases thus afford Movants no support.

* * *

Because the district court did not abuse its discretion in concluding that Movants' intervention attempt was untimely, the Court should affirm the decision below to the extent it denied intervention as of right and dismiss the appeal for lack of jurisdiction to the extent it challenges the denial of permissive intervention. *See LULAC*, 131 F.3d at 1307; *see also supra* at 4 (explaining that this Court lacks appellate jurisdiction over denial of permissive intervention under a proper exercise of district court discretion).

### C. <u>The District Court Likewise Did Not Err In Its Alternative Determination That The Motions Were Moot</u>

Because the timeliness issue disposes of the entire appeal, this Court has no need to consider the district court's alternative holding that the intervention motions pending before it, including the June 2 motion and the July 29 "emergency" renewed motion, were moot. But even if the Court were to reach the

question, that aspect of the district court's decision likewise should be affirmed.

Movants' principal argument against mootness is that if their intervention motions had been meritorious—which, for the reasons above, they were not, *see supra* Part I.A-B—then, as intervenors, they would have been entitled to an opportunity to be heard as to their objections to the consent decree. *See* OB52. But the district court did not disagree with that proposition in the abstract. Rather, the court explained that by the time the consent decree was proposed—i.e., the point at which Movants presumably would have objected—the parties had already settled the action and agreed to the consent decree, and Movants had forfeited their right to object to any consent decree by waiting so long to get involved in the litigation in the leadup to that resolution. 1-ER-2-3. That is clear from the court's reliance on this Court's decision in *California Department of Toxic Substances Control*, which the court correctly cited for the proposition that a district court does "not abuse its discretion in denying a motion to intervene that would 'complicate the issues and upset the delicate balance achieved' by the consent decree resulting from the parties' settlement." 1-ER-3 (quoting 309 F.3d at 1119); *see supra* at 33. For this reason, the district court did not err in concluding that its dismissal of the case and entry of judgment mooted the motions because there remained "no live case or controversy in which to intervene." 1-ER-3.

Again, there is no reason to reach the district court's mootness holding

because it acted well within its discretion to deny intervention on timeliness grounds. But the mootness ruling itself provides an independent ground for denial of intervention, and Movants have offered no basis to disturb that alternative holding.

## II. MOVANTS' CHALLENGE TO THE CONSENT DECREE IS NOT PROPERLY BEFORE THIS COURT

Movants dedicate the bulk of their brief to challenging the consent decree itself. Those arguments are not properly before this Court because under well-settled law, Movants—as failed intervenors—are not parties to the case and therefore may not appeal the judgment.

### A. <u>Failed Intervenors Are Not Parties And Therefore Cannot Appeal The Judgment</u>

As the Supreme Court has explained, "[a] nonparty who wishes to appeal from a district court decision ordinarily must seek to intervene in the district court proceeding. If the district court denies that intervention motion, the nonparty may appeal the denial of intervention. *But the nonparty may not obtain appellate review of any final order of the district court in the underlying proceeding unless and until the denial of intervention is reversed*." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 679 (2025) (emphasis added); *see also Marino v. Ortiz*, 484 U.S. 301, 304 (1988) ("[B]ecause petitioners were not parties to the underlying lawsuit, and because they failed to intervene for purposes of appeal, they may not appeal

from the consent decree approving that lawsuit's settlement.").

Thus, if the Court concludes that the district court's denial of intervention was within its discretion, then the non-party Movants have no right to appeal the merits, and the Court should simply affirm the decision below. *See Alaniz*, 572 F.2d at 659 ("Inasmuch as [the failed intervenors'] application for intervention was properly denied, they are without standing to litigate the merits of the decree … Therefore, [the failed intervenors'] other arguments are to no avail."); *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1023 (9th Cir. 2022) ("Because [the failed intervenor's] motion to intervene was properly denied, she never became a party to the PAGA action. And as a non-party to this action, she has no right to appeal the district court's approval of the PAGA settlement.").

But crucially, the Court also should not reach the merits even if the denial of intervention is reversed. Even if the district court should have allowed Movants to intervene, it did not, so they were not parties when they appealed, and their appeal was necessarily limited to the denial of intervention. *See Nuclear Regul. Comm'n*, 605 U.S. at 679.[9] Thus, if the Court believes that the district court abused its discretion in denying intervention, the proper remedy is to remand the case and

[9] Perhaps Movants could have avoided that problem by separately seeking to intervene for purposes of appeal, *see Marino*, 484 U.S. at 304, but they chose not to do so.

allow Movants to present their challenges to the consent decree to the district court in the first instance.

This Court's decision in *United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008), is on point. There, the Court held that the district court had erred in denying intervention to a party who had sought to intervene for the purpose of objecting to an environmental settlement between the United States and a county. *Id.* at 1240-41. But that party also wanted this Court to rule on its position with respect to the settlement in the first instance. This Court rejected that invitation, holding that it would not "short circuit the district court proceedings" by "decid[ing] the merits of [the intervenors'] position with respect to the settlement." *Id.* at 1242. The Court explained that "[i]t would not be appropriate … for us to reach the merits of [the intervenors'] position until it is fully legally and factually developed in a record before the district court," which is "what the district court's denial [of] intervention [had] prevented." *Id.* The Court thus vacated the parties' settlement and remanded the case without reaching the merits of the intervenors' challenges to that settlement.

That would also be the appropriate disposition here if the Court were to find that the district court abused its discretion in denying the motions to intervene.[10]

[10] For these reasons, this Court need not consider the arguments raised in the amicus brief filed by JVP Action, all of which are directed toward challenges to the

But as explained, this Court should instead affirm because the district court acted well within its discretion in denying intervention.

### B. **The Narrow Exception Allowing For Appeals By Non-Parties Is Inapplicable**

Movants fail to even acknowledge this barrier to their arguments on appeal, let alone argue that they qualify for an exception to the general rule—likely because no exception applies.

As recognized by this Court, "[t]he Supreme Court … has cautioned against reliance on exceptions to the rule that only parties can appeal." *Habelt v. iRhythm Techs., Inc.*, 83 F.4th 1162, 1167 (9th Cir. 2023). But even assuming that those exceptions are theoretically available here, they require "exceptional circumstances." *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020) (quotation omitted). "[E]xceptional circumstances" are established only when (1) the appellant was "significantly involved in the district court proceedings—often because they were compelled to participate by one of the parties or the court" *and* (2) "the equities of the case weigh in favor of hearing the appeal." *Id.* at 1241-42 (quoting *Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004)). Both of these elements are "[n]ecessary, but not sufficient" for the exception to apply. *United States v.*

---

consent decree rather than the appeal from denial of intervention that is properly before this Court.

*Kovall*, 857 F.3d 1060, 1068 n.6 (9th Cir. 2017). Movants can make neither showing here.

First, Movants cannot meet the "high bar" of demonstrating that they were "significantly involved in the district court proceedings." *Habelt*, 83 F.4th at 1167 (quoting *Volkhoff*, 945 F.3d at 1241). Movants filed no merits briefs, appeared at no hearings, and did not otherwise participate in the litigation. They accordingly are not positioned similarly to the non-parties in *Commodity Futures Trading Commission v. Topworth International, Ltd.*, 205 F.3d 1107 (9th Cir. 1999), who "participated in the proceedings below to the full extent possible" for "several years," including by "writing" to the court, filing timely formal objections, and appearing pro se at a hearing, *id.* at 1113-14. Instead, Movants' participation was limited to seeking intervention nearly a year after the case began. That falls far short of the high bar for demonstrating meaningful participation. *See S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002) (proposed intervenors did not meaningfully participate in proceedings where they merely filed "applications for intervention"). Indeed, if simply seeking intervention were enough to constitute "significant involvement" in lower court proceedings, failed intervenors would essentially always have standing to appeal final judgments—a result at odds with the general rule that "only parties to a lawsuit … may appeal." *Marino*, 484

U.S. at 304.[11]

Second, and in any event, the equities do not weigh in favor of permitting the appeal. This Court has found that requirement satisfied where "a party has haled the non-party into the proceeding against his will" or "when judgment has been entered against the non-party." *Hilao*, 393 F.3d at 992 (quotation omitted). Neither circumstance applies here. Dismissal of the appeal to the extent it purports to appeal from the judgment is therefore appropriate. *See id.* (finding equities did not support non-party standing to appeal where neither of the enumerated circumstances applied); *Ashok Babu v. Wilkins*, 2023 WL 6532647, at *1 (9th Cir. Oct. 6, 2023) (no non-party standing to appeal, notwithstanding that non-party participated in the proceedings, where non-parties "would not be bound by the judgment"); *see also Edison*, 307 F.3d at 804 (finding "nothing inequitable about limiting participation in this appeal to submission of amicus briefs" after upholding denial of intervention).

---

[11] To the extent Movants rely on their counsel having filed an amicus brief on behalf of FJP as evidence of further involvement in the district court proceedings—a stance that would serve only to further underscore that their intervention motions were untimely given the amicus brief's early recognition that FJP's interests were at stake in the litigation, as discussed above, *see supra* at 7-8—that argument is likewise unavailing. *See Finn v. Cobb Cnty. Bd. of Elections & Registration*, 111 F.4th 1312, 1319 (11th Cir. 2024) ("[P]articipat[ing] as an amicus … does not qualify as participation for nonparty appellate standing." (citing 15A Charles Alan Wright et al., *Federal Practice and Procedure* § 3902.3 (3d ed. 2024))).

## CONCLUSION

For the foregoing reasons, this Court should (i) affirm the district court's denial of intervention as of right and (ii) dismiss the appeal for lack of jurisdiction to the extent it challenges the district court's denial of permissive intervention or the consent judgment itself.

Dated: July 31, 2026

Respectfully submitted,

*<u>/s/ Anton Metlitsky</u>*
Anton Metlitsky
Jennifer B. Sokoler
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 326-2000
ametlitsky@omm.com
jsokoler@omm.com

Matthew R. Cowan
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
(213) 430-6000
mcowan@omm.com

Meaghan VerGow
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5504
mvergow@omm.com

*Attorneys for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface and type-volume limitations set forth in Circuit Rule 32-1(a) and Federal Rule of Appellate Procedure 32(a)(5)(A). This brief uses a proportional typeface and 14-point font, and it contains 11,161 words.

Dated: July 31, 2026

By: */s/ Anton Metlitsky*
Anton Metlitsky

*Attorney for Defendants-Appellees*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendants-Appellees state that they are not aware of any related cases currently pending before this Court.

Dated: July 31, 2026

By: */s/ Anton Metlitsky*
Anton Metlitsky

*Attorney for Defendants-Appellees*